IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

FILED
APR 2 5 2006
J T NOBLIN, CLERK
BY_____ DEPUTY

DORIS EVERITT, Executrix of
The Estate of Robert M. Everitt, Sr.,
Deceased, and ALL PLAINTIFFS IDENTIFIED
AND LISTED ON ATTACHED EXHIBIT "A"      PLAINTIFFS

v.                                       CAUSE NO. 3:06cv231TSL-JCS

PNEUMO ABEX, LLC                         DEFENDANT

COMPLAINT FOR BREACH OF CONTRACT OF A
SETTLEMENT AGREEMENT AND OTHER CAUSES

JURY TRIAL REQUESTED

COME NOW, Doris Everitt, Executrix of the Estate of Robert M. Everitt, Sr., Deceased, et al., Plaintiffs, and file this Complaint against Defendant Pneumo Abex Corporation (hereinafter "Defendant"), for breach of contract of a settlement agreement and other damages and in support thereof would show unto the Court the following:

1. The Plaintiff, Doris Everitt is an adult resident citizen of Rankin County Mississippi and is the Executrix of the Estate of Robert M. Everitt, Sr. Robert M. Everitt, Sr., is a deceased mesothelioma victim and was a party to the settlement agreement with Defendant. The remaining Plaintiffs are (i) adult resident citizens of the State of Mississippi, or other states of the United States or (ii) personal representatives or, the wrongful death

beneficiaries, pursuant to applicable law, of deceased Plaintiffs, and are listed and identified on Exhibit "A" who entered into a settlement agreement contract with the Defendant to be performed in whole or in part within Hinds County, Mississippi.

2. Defendant Pneumo Abex, LLC (hereinafter "Pneumo") is a Delaware limited liability company with its principal place of business in New York, New York. Pneumo is the successor by merger to Pneumo Abex Corporation. Pneumo entered into a settlement agreement with the Plaintiffs to be performed in whole or part within Hinds County and may be served with process by service upon its authorized agent, Corporation Service Company, Suite 400, Wilmington, Delaware, 19808 and/or its principal place of business in New York, N.Y.

JURISDICTION

3. This Court has original jurisdiction of this action pursuant to 28 U.S.C. Sec. 1332 and the amount in controversy exceeds $75,000.00 without regard to setoff or counterclaim and exclusive of interest and costs.

BACKGROUND AND OTHER RELEVANT INFORMATION

4. Plaintiffs repeat and re-allege all of the allegations contained in the paragraphs 1-3 above as if fully set forth herein.

5. On or about February 8, 2000 the Plaintiffs, Doris Everitt, Executrix of the Estate of Robert M. Everitt, Sr., and all Plaintiffs listed on attached Exhibit "A" filed their complaint for damages due to the exposure by the Plaintiffs to Defendant's asbestos-containing products which were manufactured, distributed and/or sold by Defendant Pneumo. Pneumo is a named defendant therein, said complaint being *Hilry A. Anderson and All Plaintiffs Listed on Attached Exhibit "A" v. The Flintkote Company and All Defendants Listed on Attached Exhibit "B"*, Circuit Court of Jefferson County, Mississippi, Cause No. 2000-22.

6. On or about August 17, 2000, the Circuit Court of Jefferson County entered a case management order which provided for the discovery and orderly disposition of the Plaintiffs' claims against the Defendant and ultimately provided for the mechanism by which trial dates were obtained.

7. Pending Plaintiffs' request for a trial setting, the parties to this Complaint entered into arm's-length settlement negotiations concerning the Plaintiffs' respective claims. On July 6, 2001, an agreement was entered into between the Plaintiffs and Pneumo, et al. On August 6, 2001, the parties to the *Hilry Anderson* complaint

received notice of a trial setting from the court administrator setting the case for trial on October 1, 2001.

8. In anticipation of the trial date and in exchange for the Plaintiffs' tort rights, Defendant Pneumo, together with the co-obligors, and Plaintiffs entered into the Settlement Agreement dated July 6, 2001, a true and correct copy of which is attached hereto as Exhibit "B". Defendant Pneumo joined with Wagner Electric and co-obligors Ferodo America Inc., f/k/a Nuturn Corporation and Gasket Holdings, Inc., f/k/a Flexitallic, Inc. as joint obligors to compromise and settle Plaintiffs' tort claims and thereby became jointly and severally liable under the Settlement Agreement to the Plaintiffs herein.

9. Thereafter and a result of the aforestated settlement agreement, an Agreed Order of Dismissal Without Prejudice dismissing Pneumo Abex Corporation was entered by the Circuit Court of Jefferson County, Mississippi on September 21, 2001. Such Dismissal constitutes good faith consideration and performance by the Plaintiffs under the Settlement Agreement. The Plaintiffs, in good faith and for adequate consideration, bargained, traded and exchanged their tort rights against Pneumo for the contract rights arising from the Settlement Agreement set forth above.

10. Thereafter, on or about October 1, 2001, Federal Mogul Global, Inc. filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. Included within the Federal Mogul bankruptcy quagmire were at least 156 of Federal Mogul's affiliates including Ferodo America, Inc., f/k/a Nuturn Corporation and Gasket Holdings, Inc., f/k/a Flexitallic, Inc., both co-obligors and parties to the July 6, 2001 Settlement Agreement.

11. Thereafter, Plaintiffs are informed and believe that certain parties, on behalf of Pneumo, sought to include the Pneumo asbestos liability under the Federal Mogul bankruptcy and did so by filing for injunctive relief. The relief sought for Pneumo in the adversary proceeding was only recently denied by the Bankruptcy Court on January 20, 2006.

12. The connection between Defendant Pneumo and Federal Mogul, Wagner Electric, Ferodo and Flexitallic is believed to be as follows:

    a. In 1994, Pneumo sold the assets constituting its friction brake products business to Wagner Electric. Prior to 1998, Wagner Electric was merged into Moog Automotive. In 1998 Moog Automotive was purchased by Federal Mogul Corporation which changed

5

Moog's name to Federal Mogul Products, Inc. Federal Mogul Products, Inc. is one of the 156 affiliates in the Federal-Mogul Global, Inc. bankruptcy. The Plaintiffs are informed and believe after diligent search and inquiry that Wagner and Pneumo are not a part of the Federal-Mogul Global, Inc. bankruptcy.

b. The co-debtors of the Settlement Agreement, Ferodo America, Inc., f/k/a Nuturn Corporation and Gasket Holdings, Inc., f/k/a Flexitallic, Inc., are direct affiliates and/or subsidiaries of Federal Mogul Corporation and are a part of the Federal Mogul Corporation bankruptcy, In Re: *Federal-Mogul Global, Inc., T&N Limited, et al.*, In the United States Bankruptcy Court for the District of Delaware, Chapter 11, Case No. 01-10578 (RTL) (Jointly Administered).

13. At all relevant times Defendant Pneumo had, and continued to have, an indisputable identity of interest with Federal Mogul and the Federal Mogul bankruptcy has resulted in exceptionally unusual circumstances under which the Plaintiffs have suffered and have been delayed in collecting those funds due under the Settlement Agreement.

14. Only after the attempt to intervene on behalf of Pneumo to join and become a part of the Federal Mogul

bankruptcy was rejected by the Federal Mogul bankruptcy court, were the Plaintiffs then of a certainty able to proceed with the Settlement Agreement.

15. Plaintiffs' attempt to process the Settlement Agreement was rejected by counsel for Defendant as evidenced by the attached letter dated April 3, 2006, (Exhibit "C"), which constitutes an intentional, willful, wanton, deliberate and material breach and default of the Settlement Agreement.

16. Scarcely one month after Plaintiffs fulfilled their contractual obligation by dismissing Defendant Pneumo, Federal Mogul filed bankruptcy. Plaintiffs were induced by the representations and conduct of the Defendant in the Federal Mogul bankruptcy proceedings not to seek enforcement of the aforesaid Settlement Agreement as it was being represented that the bankruptcy would capture these claims. Defendant Pneumo knew or had reason to know that the Plaintiffs would not attempt to enforce their rights under the Settlement Agreement. Now Defendant Pneumo relies upon its own misconduct in this matter to avoid its obligations under the Settlement Agreement.

17. Defendant Pneumo knew when it executed the Settlement Agreement and bound itself jointly and severally by the terms thereof that it did not intend to honor the

agreement as evidenced by the bankruptcy. The Plaintiffs had negotiated with Defendant Pneumo and executed the Settlement Agreement in good faith and the Plaintiffs, to their detriment, relied upon the good faith and fair dealing of Defendant Pneumo when the Settlement Agreement was consummated.

## COUNT I

### BREACH OF CONTRACT

18. Plaintiffs repeat and re-allege all of the allegations contained in Paragraph 1-17 above as if fully set forth herein.

19. After extensive negotiations with co-obligors Ferodo America, Inc., f/k/a Nuturn Corporation and Gasket Holdings, Inc., f/k/a Flexitallic, Inc., Wagner Electric and Defendant Pneumo, as set forth above, the Plaintiffs and Defendant Pneumo, jointly and severally, on July 6, 2001 entered into the Settlement Agreement contract (Exhibit "B").

20. The Settlement Agreement provided for a disease matrix which would pay in accordance with individual disease categories as defined in the Settlement Agreement. It also provided for a "cancer waiver," i.e., that the non-malignant plaintiffs are allowed to re-apply to the Defendant for additional compensation in the event the

Plaintiff develops a malignancy in one of the defined categories. This provision is an integral part of the contract by specific design and has no time limitation for enforcement. The deaths of all non-malignant plaintiffs prior to diagnosis with one or more of the defined malignancies would be required to invalidate the Settlement Agreement and thereby permit time to run on the enforcement thereof.

21. At Page 3, Paragraph 3 of the Settlement Agreement, Defendant Pneumo agreed that dismissal provided in good faith would not prejudice the Plaintiffs and the statute of limitations ". . . shall be tolled as of the date of the dismissal with prejudice effecting said plaintiff".

22. Accordingly, the position of Defendant Pneumo, as evidenced by the letter dated April 3, 2006 (Exhibit "C"), is that the time for submissions has expired. This is contrary to the four corners of the Settlement Agreement and constitutes an intentional bad faith breach of the Settlement Agreement. All parties to the Settlement Agreement were represented by counsel and each of the co-obligors knowingly, willingly and for adequate consideration entered into the Settlement Agreement. Further, Pneumo and each of the co-obligors jointly and

severally agreed to the obligations under the Settlement Agreement and are therefore jointly and severally liable to the Plaintiffs for those obligations.

## COUNT II

### Fraudulent Concealment and Fraudulent Inducement

23. Plaintiffs repeat and re-allege all of the allegations contained in Paragraphs 1-22 above as if fully set forth herein.

24. Defendant Pneumo, due to its unique and indisputable relationship to and with Federal Mogul Corporation, knew or should have known that Federal Mogul was on the verge of bankruptcy in July of 2001.

25. Due to the intimate knowledge and relationship of Pneumo of Federal Mogul Corporation's financial condition, Defendant Pneumo knew or should have known that the co-obligors to the Settlement Agreement, Ferodo America, Inc., f/k/a Nuturn Corporation and Gasket Holdings, Inc., f/k/a Flexitallic, Inc., would be a part of the Federal Mogul bankruptcy, thereby in all likelihood rendering the co-obligors bankrupt defendants.

26. Due to the intimate knowledge and relationship of Defendant Pneumo with the Federal Mogul Corporation and its financial condition, Defendant Pneumo knew or should have known of the pending bankruptcy of Federal Mogul and the

delaying effect such bankruptcy would have on the Plaintiffs in restricting the Plaintiffs' ability to collect under the Settlement Agreement.

27. The financial condition of Federal Mogul and its affiliated companies including the Defendant and the co-obligors, Ferodo America, Inc., f/k/a Nuturn Corporation and Gasket Holdings, Inc., f/k/a Flexitallic, Inc., was material, factual information which was intentionally, deliberately, maliciously and willfully withheld from the Plaintiffs which constitutes fraudulent concealment of material facts entitling the Plaintiffs to all relief available under the law.

28. The failure of Defendant Pneumo to disclose the financial condition of Federal Mogul and the financial condition of co-obligors, Flexitallic and Ferodo, was an intentional, deliberate effort to fraudulently induce the Plaintiffs into entering into the Settlement Agreement while Defendant Pneumo knew that the co-obligors would soon be bankrupt and such bankruptcy would materially impede the ability of the Plaintiffs to collect under the Settlement Agreement. Further, Defendant is by virtue of its conduct, superior and undisclosed knowledge and Plaintiffs' detrimental reliance on same, equitably estopped from denying the validity of the Settlement Agreement.

## COUNT III

### Damages

29. Plaintiffs repeat and re-allege all of the allegations contained in the paragraphs 1-28 above as if fully set forth herein.

30. As a direct and proximate result of Defendant Pneumo's breach of contract and breach of its duty of good faith and fair dealing as delineated above, the Plaintiffs have sustained irreparable harm and compensatory damages in an amount not less than $2,446,750.00 and Plaintiffs are entitled to a judgment for same, from Defendant Pneumo.

31. As a direct and proximate result of Defendant Pneumo's breach of contract and breach of its duty of good faith and fair dealing as delineated above, the Defendant acted intentionally, willfully, recklessly, maliciously, wantonly in deliberately breaching and violating their contractual duties to Plaintiffs and violating the terms of the Settlement Agreement such that Plaintiffs are entitled to punitive and exemplary damages in the maximum amount allowed by law from Defendant Pneumo.

32. As a consequence of Defendant Pneumo's conduct as delineated above, the rights and duties of the parties to the Settlement Agreement are in question and the Plaintiffs are entitled to a declaratory judgment that the Settlement

Agreement as a whole and the cancer waiver provision contained therein for the non-malignant Plaintiffs are valid, enforceable, continuing and ongoing.

33. As a direct and proximate result of Defendant Pneumo's breach of contract and breach of its duty of good faith and fair dealing as delineated above, the rights and duties of the parties to the Settlement Agreement are in question and the Plaintiffs are entitled to a declaratory judgment that the Settlement Agreement, including the cancer waiver for the non-malignant Plaintiffs, is valid and enforceable and is continuing and ongoing.

34. In breaching its duties to Plaintiffs as described above, Defendant Pneumo has acted willfully, intentionally, recklessly, maliciously, wantonly in that it fraudulently concealed material facts concerning the financial condition of Federal Mogul, Federal Mogul's co-debtors, and the financial condition of itself, demonstrating a reckless disregard for the truth entitling the Plaintiffs to recover punitive and exemplary damages in the maximum amount allowed by law from Defendant Pneumo for its outrageous misconduct as set forth herein.

35. In breaching its duties to Plaintiffs as described above, Defendant Pneumo has acted willfully, intentionally, recklessly, maliciously, and wantonly in

that Defendant Pneumo fraudulently induced the Plaintiffs to enter into the Settlement Agreement which has materially and irreparably harmed the Plaintiffs and entitles Plaintiffs to receive punitive and exemplary damages in the maximum amount allowed by law from Defendant Pneumo for its outrageous misconduct as set forth herein.

### COUNT IV

### Specific Performance

36. Plaintiffs repeat and re-allege all of the allegations contained in the paragraphs 1-35 above as if fully set forth herein.

37. Plaintiffs are prepared to continue to abide by and comply with the terms of the Settlement Agreement, which was entered by them in good faith and with justifiable reliance upon and trust in the probity of Defendant Pneumo and its attorneys, and upon the covenant of good faith and fair dealing that inheres in every contract. To date, Plaintiffs have received nothing for which they bargained under the Settlement Agreement.

38. Plaintiffs now lack a plain, adequate and speedy remedy at law because of the prejudicial passage of time from the filing of the *Hilary Anderson* complaint and the intentional, impermissible delay occasioned by Defendant Pneumo's misconduct as described above since the Settlement

Agreement was entered, and because Plaintiffs have suffered a concomitant deterioration in health and exhaustion of resources since that time.

39. Defendant Pneumo's refusal to honor the Settlement Agreement has been and is willful, malicious, calculated deliberately to abuse the Plaintiffs' trust and confidence for its own advantage, constitutes an outrageous breach of the covenant of good faith and fair dealing, and was motivated by subjective bad faith.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand as follows:

A. Under Counts I, II, III and IV above: a declaratory judgment that the Settlement Agreement as a whole, and the non-malignant cancer waiver provision in particular, are valid, enforceable, effective and continuing.

B. Under Counts I, II, and III above: compensatory damages in the amount of $2,446,750.00, punitive damages in the maximum amount allowed by law against Defendant Pneumo in a total amount to be determined in a trial of this matter, together with pre-judgment interest from the date of filing of this complaint, attorneys' fees, costs, post judgment interest and such other and further general relief as this Court may deem just and proper.

C. Under Count IV above: a judgment of this Court requiring Defendant Pneumo specifically to perform its duties under the Settlement Agreement within a stated reasonable period of time from entry thereof, and awarding to Plaintiffs, as a consequence of the outrageous, willful and bad faith misconduct exhibited by Defendant Pneumo as described above, such sum as will deter such misconduct in the future, all attorneys' fees incurred by Plaintiffs herein, their costs, pre-judgment interest from the date of the filing of this complaint, post-judgment interest and such other and further general relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED, this the 25th day of April, 2006.

/s/ Tom B. Scott III
WILLIAM B. KIRKSEY, MSB # 4183
TOM B. SCOTT, III, MSB # 6578

OF COUNSEL:

William B. Kirksey, Esq.
MSB #4183
Kirksey & Associates
P. O. Box 33
Jackson, Mississippi  39205-0033
(601) 355-0366
(601) 354-2433 facsimile

Jeffrey A. Varas, Esq.
MSB #6592
Post Office Box 886
Hazlehurst, Mississippi 39083
(601) 894-4088
(601) 894-4688 Facsimile

Tom B. Scott, III, Esq.
MSB# 6578
Scott and Scott, Ltd.
P. O. Box 2009
5 Old River Place
Jackson, Mississippi  39215-2009
(601) 353-9522
(601) 353-9527 Facsimile

Stephen L. Shackelford, Esq.
MSB #6718
2001 Airport Road N.
Suite 301
Jackson, Mississippi  39232
(601) 936-9939
(601) 936-9934 Facsimile

16