```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

DORIS EVERITT, EXECUTRIX OF
THE ESTATE OF ROBERT M. EVERITT,
SR., DECEASED, ET AL.                                  PLAINTIFF

VS.                          CIVIL ACTION NO. 3:06CV231TSL-JCS

PNEUMO ABEX, LLC                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Pneumo Abex, LLC for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and on the motion of plaintiffs Doris Everitt, Executrix of the Estate of Robert M. Everitt, Sr., deceased, et al, for summary judgment on the questions of contract validity and breach thereof.  These motions have been fully briefed by the parties and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion should be granted and plaintiffs' motion denied.

In February 2000, plaintiffs herein, numbering somewhere between 1300 and 1400, filed a lawsuit in the Circuit Court of Jefferson County against Pneumo and other asbestos manufacturers, distributors or sellers seeking recovery under various theories for injuries alleged to have resulted from plaintiffs' exposure to the defendants' asbestos-containing products, that case being

styled <u>Hilary Anderson, et al. v. The FlintKote Co., et al.</u>, Cause No. 2000-22.  In this cause, plaintiffs allege that on July 6, 2001, they entered into a settlement agreement with Pneumo and its co-defendants in the Anderson case, Ferodo America, Inc. f/k/a Nuturn Corporation, Gasket Holdings, Inc. f/k/a Flexitallic, Inc., and Wagner Electric Corporation n/k/a Federal Mogul, Inc., pursuant to which an agreed order of dismissal with prejudice was entered in the Anderson case on September 21, 2001.  Plaintiffs herein allege that Pneumo has breached the settlement agreement, and plaintiffs have thus brought this action demanding specific performance of the settlement agreement or damages for its breach.

The putative settlement agreement, set forth in a July 1, 2001 letter to plaintiffs' counsel from counsel for the four Anderson defendants, purported to "confirm settlement of approximately 1400 plaintiffs' claims" and to define the terms of the parties' agreement.  The agreement established a schedule of amounts payable to each plaintiff by reference to the nature of his or her injury, i.e., a "disease matrix," as follows:

```
$ 1,050.00 for each asbestotic with a cancer waiver;
$ 3,750.00 for each other cancer;
$ 7,500.00 for each lung cancer; and
$15,000.00 for each mesothelioma.
```

According to the agreement, these sums were to be paid by defendants to counsel for plaintiffs, as trustee for their clients, according to a schedule providing for six quarterly payments of $200,000 commencing November 1, 2001, with the

2

"Remainder" to be paid on or commencing May 1, 2003. The "Remainder," which was to be determined on May 1, 2003, was defined as "the remaining sum to be paid to plaintiffs whose claims qualify for payment under the terms of this settlement agreement." According to the agreement, if the amount of qualifying claims that had not been paid by May 1, 2003 was below $200,000, then those claims would be paid on May 1, 2003. If the amount of qualifying claims not paid by May 1, 2003 exceeded $200,000, then defendants would continue to pay $200,000 every three months until all qualifying claims were paid in full.

The agreement recited that "no amount will be paid until plaintiffs have submitted the settlement documents referred to below," and reiterated this requirement, stating, "Prior to payment of any funds by Defendants to an individual plaintiff, that plaintiff will submit a release ..., certification of a medical doctor evidencing an asbestos-related disease, and where appropriate, documentation relating to estate papers and death certificates." Finally, the agreement recited:

> Plaintiffs' counsel have reviewed the provisions of this agreement and have concluded that this agreement is in the best interest of their clients. Accordingly, plaintiffs' counsel agree that they shall (subject to the exercise of their independent professional judgment as to the circumstances of individual clients) strongly recommend this agreement to the plaintiffs covered hereby. Plaintiffs' counsel believe that virtually all of their clients will accept this recommendation. However, it is acknowledged that one or more plaintiffs may elect not to accept this settlement. In that event, it is agreed that the dismissal with prejudice as to any

3

such plaintiff not accepting this settlement shall be
vacated, and the amount of the settlement will be
reduced by the corresponding settlement amount for each
rejecting plaintiff.

Shortly before the Anderson defendants' first $200,000 payment was due under the agreement, three of those defendants, Federal Mogul, Inc., Ferodo America f/k/a Nuturn Corporation and Gasket Holdings, Inc. f/k/a Flexitallic, Inc., filed for Chapter 11 bankruptcy protection.[1] And, while not a debtor itself, Pnuemo nevertheless sought to intervene in the bankruptcy proceeding through an adversary proceeding for injunctive relief. Broadly speaking, Pneumo took the position that through a series of agreements with Federal Mogul's predecessors, it was entitled to indemnity from Federal Mogul for its liability to asbestos plaintiffs, including the Anderson plaintiffs, and that this right to indemnity created an identity of interest with the debtors which entitled Pneumo to the protection of the bankruptcy automatic stay and to have the plaintiffs' claims for payment resolved through the Federal Mogul bankruptcy. In a ruling on February 2006, the bankruptcy court denied Pneumo's request for injunctive relief and thus rejected its efforts to be included in the Federal Mogul bankruptcy. In the meantime, during the over

---

[1] The bankruptcy petition was filed by Federal Mogul Global, Inc. Included within the bankruptcy were 156 of its affiliates, including Federal Mogul Products, Inc., successor to Wagner Electric Corporation, Ferodo America f/k/a Nuturn Corporation and Gasket Holdings, Inc. f/k/a Flexitallic, Inc.

4

four years that passed in the interim, Pneumo made no payments into the Anderson settlement fund, as required by the settlement agreement with plaintiffs, nor did any plaintiff submit a claim for settlement monies under the agreement. However, in March and April of 2006, after the bankruptcy court had rejected Pneumo's efforts to secure protection in the Federal Mogul bankruptcy, fifty-seven of the Anderson plaintiffs submitted to Pneumo claims for payment under the settlement agreement. Pneumo promptly rejected all these claims, taking the position the claims had not been timely filed in accordance with the terms of the agreement. Plaintiffs thus filed the present action demanding specific performance of the settlement agreement or damages for breach of contract.

Pneumo has now moved for summary judgment on plaintiffs' claims, and plaintiffs have themselves filed a cross-motion for partial summary judgment on the questions of contract validity and breach of contract. For the reasons that follow, the court concludes that plaintiffs' claims are time-barred in part, and otherwise without merit. Accordingly, Pneumo is entitled to summary judgment.

With reference to plaintiffs' claims for breach of contract and specific performance, Pneumo first argues that these claims fail because there was no contract for it to breach. Pneumo argues that the putative contract on which plaintiffs' complaint

5

is based was no contract at all, but rather what it terms an "administrative agreement" by which Pneumo and its codefendants merely extended an *offer* of settlement to the Anderson plaintiffs. Pneuno contends that since no plaintiff ever accepted the offer by submitting a qualifying, i.e., timely, claim for settlement proceeds, then no contract was ever formed so that necessarily, there could have been no breach of contract.

Having reviewed the agreement, the court concludes there is no question but that Pneumo and its codefendants entered into a settlement agreement with plaintiffs, through plaintiffs' counsel, by which Pneumo and its codefendants purportedly agreed to pay a sum certain to each plaintiff who filed qualifying settlement documents. The agreement also purported to obligate Pneumo and its codefendants to pay prescribed amounts into a settlement fund according to an established schedule, which obligation was not conditioned on any plaintiff's having first made a qualifying claim for settlement funds. In the court's opinion, therefore, Pneumo is not entitled to summary judgment on the basis of its argument that there was never a settlement agreement.

As part of the settlement agreement with the Anderson plaintiffs, Pneumo and its codefendants expressly agreed that from November 1, 2001 through February 1, 2003, they would pay $200,000 every three months into a trust fund established by plaintiffs' counsel to fund the settlement agreement. Then, on May 1, 2003,

6

the parties would determine how much remained to be paid by reference to the number of qualifying claims that were outstanding as of that date. In its motion, Pneumo submits that to the extent plaintiffs may be claiming that Pneumo breached the settlement agreement by failing to make payments provided for in the agreement, it is entitled to summary judgment for two reasons. First, it contends that any claim that it failed to make the first six $200,000 payments is barred by the three-year statute of limitations of Mississippi Code Annotated § 15-1-49, since plaintiffs' complaint was filed more than three years after these payments were due. See Freeman v. Truitt, 119 So. 2d 765, 771 (Miss. 1960) (stating that "where a debt is payable in installments the general rule is that the statute of limitations begins to run as to each installment from the time when it falls due; and the creditor can recover only those installments falling due within the statutory period before the beginning of the action. The bar of the statute applies to installments which were due and unpaid for more than the statutory period."); see also Kersey v. Fernald, 911 So. 2d 994 (Miss. Ct. App. 2005) (quoting Freeman).

Pneumo acknowledges that plaintiffs' complaint was filed within three years of the date on which the "remainder" payment

was purportedly due under the contract;[2] but it contends the claim for breach of contract for failure to pay the "remainder" on May 1, 2003, while not time-barred, nonetheless fails, because under the agreement, payment was due on or after that date only for the amount of qualifying claims that remained unpaid as of May 1, 2003, and since no qualifying claims had been submitted as of that date, then no monies were due any plaintiff and therefore, no breach occurred.  Pneumo finally argues that it is entitled to summary judgment on plaintiffs' claim for breach of contract premised on Pneumo's rejection of the claims submitted in the spring of 2006, because the requirement of timely submission of releases and medical certifications was a condition precedent to payment to any individual plaintiff, and since no plaintiff made a timely submission of the required settlement documents, then Pneumo's duty to pay claims under the agreement never arose.  See Turnbough v. Steere Broadcasting Corp., 681 So. 2d 1325, 1327 (Miss. 1998) (defining condition precedent as "a condition which must be fulfilled before the duty to perform an existing contract arises") (quoting Mid-Continent Telephone Corp. v. Home Telephone Co., 319 F. Supp. 1176 (N.D. Miss. 1970)).  In the court's opinion, Pneumo's position as to all these points is well taken.

---

[2] The "remainder" payment was due May 1, 2003; plaintiffs' complaint was filed April 25, 2006.

8

As appears from their complaint, plaintiffs' claim for breach of contract is based on the fact that their claims for payment under the settlement agreement, which they (or some of them) submitted in early 2006, were rejected by Pneumo as not having been timely made. These plaintiffs insist that their claims were timely under the terms of the agreement, and that Pneumo's refusal to honor their claims was a breach of the settlement agreement. In this vein, plaintiffs first argue their claims were timely because the settlement agreement imposed no specific deadline for making claims, or, as plaintiffs phrase it, the agreement "contained no temporal schedule for or limitation on submission by claimants of information and documents required for payment." This is patently incorrect.

Under the express terms of the agreement, no funds were payable to any individual plaintiff until such plaintiff submitted the required settlement documents, including a medical certification and a release. Although the agreement did not expressly establish a deadline for submission of the required documentation, there is no question but that it did so implicitly, by establishing May 1, 2003 as the date on which the parties would determine "the remaining sum to be paid to plaintiffs whose claims qualify for payment." Necessarily, to "qualify for payment," and hence to be considered timely, a plaintiff's settlement documents were required to be submitted on or before May 1, 2003, since that

9

was the date for finally determining the total amount payable by defendants to satisfy all qualifying claims. The court recognizes, of course, that the agreement contemplated that payments under the agreement could extend beyond May 1, 2003 (in the event unpaid qualifying claims as of that date exceeded $200,000); but the manifest intention, and only reasonable interpretation of the agreement, was to require that all claims for payment thereunder be submitted no later than May 1, 2003.[3] This was not done.[4]

---

[3] In a related vein, plaintiffs argue that the inclusion of a "cancer waiver" in the agreement clearly reflects the parties' intention that no time limit was imposed for submission of required documents by any claimant. The settlement agreement provided for payments of $1,050.00 to each asbestotic with a cancer waiver. According to plaintiffs, the "cancer waiver" allowed a claimant compensated as an asbestotic who was later diagnosed with a cancer to make a later claim under the agreement for payment commensurate with his or her cancer diagnosis. Plaintiffs reason that this left the agreement essentially open-ended, at least as to the asbestosis plaintiffs. However, it is clear from the terms of the agreement that the "cancer waiver" and whatever rights it created applied only to those asbestosis plaintiffs who timely accepted the original settlement offer.

[4] In their response to Pneumo's motion, plaintiffs characterize the settlement agreement as "expressly permitt[ing] individual claimants to opt out of it or to submit documents required for payment of their claims," and they state, "Of course, the 'opt-out' provisions contained in the Settlement Agreement are the means by which individual claimants can overcome the presumption that they are bound by it...." In fact, however, the settlement agreement contains no opt-out provision, and instead provides only that no funds will be distributed to any claimant until that claimant shall first have submitted the required settlement documents. The means by which a plaintiff could reject the agreement was by not timely accepting it.

10

Plaintiffs argue, alternatively, that even if the agreement established May 1, 2003 as the deadline for submitting claims, performance under the agreement by all parties was temporarily suspended due to the Federal Mogul bankruptcy.[5] Plaintiffs point out that once the Federal Mogul bankruptcy was filed, they were left holding a pre-petition settlement agreement as to which three of the four obligors were in bankruptcy, and the fourth, Pneumo, was seeking to intervene in the Federal Mogul bankruptcy to have the claims of asbestos plaintiffs against it resolved through the Federal Mogul bankruptcy proceeding. Plaintiffs note that the automatic stay provisions of 11 U.S.C. § 362(a) clearly protected the three debtors from any judicial action to enforce the settlement agreement. They submit that the bankruptcy also suspended any duty on the part of the debtors to perform under the agreement, so that consequently, there was no breach of the settlement agreement by the debtors and hence no basis upon which plaintiffs could have sought redress against the debtors.

---

[5] It is likely because of their position on this issue that plaintiffs appear to have sued, not for Pneumo's failure to make the contractual payments into the settlement fund, but rather for Pneumo's rejection of their claims in 2006. Perhaps plaintiffs recognize that in light of their own failure to submit claims for payment in accordance with the clear terms of the agreement, i.e., on or before May 1, 2003, they would be hard-pressed to contend that Pneumo breached the agreement by failing to make the agreed-upon payments into the settlement fund. In an abundance of caution, however, and since plaintiffs' position is not entirely clear, the court will address both scenarios.

11

Plaintiffs further argue that although Pneumo was a non-debtor, they reasonably concluded that Pneumo, because of its identity with the debtors arising from certain indemnity obligations, was entitled to the protection of the automatic stay *and* that Pneumo's obligations under the settlement agreement, like those of the debtors, were also suspended during the pendency of the Federal Mogul bankruptcy.  They contend that their own performance, in turn, was suspended due to the bankruptcy, relying on the principle that,

> where one party having the right to demand performance
> stands ready and willing to carry out an executory
> contract but the other party cannot perform due to a
> temporary impossibility, the passing of the designated
> date for performance does not result in voiding the
> contract.  Rather, the event simply extends the time of
> performance appropriately until the impossibility
> ceases.

In re Estate of Pickett, 879 So. 2d 467l 471 (Miss. Ct. App. 2004).  In the court's opinion, this principle has no applicability to plaintiffs herein.

In the Pickett case, on which plaintiffs rely, Nell Pickett contracted to sell certain property to Bruce Kirkland, with the closing to occur on December 15, 1999.  However, Mrs. Pickett died before the scheduled closing date.  Mrs. Pickett's will, dated March 26, 1999, devised the same property to the Van Ettens. After Mrs. Pickett's estate was finally opened, Kirkland petitioned the chancellor to enforce Mrs. Pickett's contract to sell him the property, but the Van Ettens opposed Kirkland's

efforts, arguing that since the closing date had passed, the contract had expired and was no longer valid. Kirkland prevailed before the chancellor, and on appeal, since Mrs. Pickett's death and some initial problems with opening an estate, made it impossible to close on the sale by the date set forth in her contract with Kirkland.

In this case, plaintiffs argue that the filing of Federal Mogul's bankruptcy petition before any performance was due by Pneumo or its co-obligors under the settlement agreement was the legal equivalent of Nell Pickett's death: "an intervening and disabling event rendering performance by the designated date temporarily impossible and extending the time of performance appropriately until the impossibility ceased." The court is unpersuaded. While plaintiffs' position might be meritorious as applied to Ferodo America, Inc. f/k/a Nuturn Corporation, Gasket Holdings, Inc. f/k/a Flexitallic, Inc., and Federal Mogul Products, Inc., see 30 Samuel Williston, A Treatise on the Law of Contracts § 77:40 (4th ed. 2004) ("In effect, the automatic stay makes it legally impossible for a debtor to fully satisfy creditor demands."), it has no merit as applied to Pneumo.

Plaintiffs' argument on this point is premised on the automatic stay provision of 11 U.S.C. § 362(a)(1), which automatically stays all proceedings against the debtor upon the filing of the bankruptcy petition:

13

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of–
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). Plaintiffs apparently take the position that although the bankruptcy court ultimately rejected Pneumo's efforts to secure the protection of the automatic stay and to have the asbestos damage claims against it resolved through the Federal Mogul bankruptcy, until that ruling by the bankruptcy court, they, like Pneumo, reasonably believed Pneumo was covered by the automatic stay and that they could not, therefore, pursue their claims under the settlement agreement. Similarly, they suggest that because of the bankruptcy, they reasonably concluded that the performance of all parties under the settlement agreement was suspended. They maintain that only when the bankruptcy court finally rejected Pneumo's position in February 2006 did it become clear that Pneumo was ineligible for any relief under federal bankruptcy law, and that they acted timely by then "continu[ing] the process of submitting their claims pursuant to the Settlement Agreement." Plaintiffs insist on these facts that Pneumo breached

14

the contract when it rejected these claims on the basis that "the time to submit releases had expired."

"The purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.'" Reliant Energy Servs., Inc. v. Enron Canada Corp., 349 F.3d 816, 825 (5th Cir. 2003) (quoting GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 716 (5th Cir. 1985). While all courts recognize that the automatic stay of § 362, by its terms, "applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors," see id. (quoting GATX Aircraft, 768 F.2d at 716), most also recognize that there are "rare" or "unusual" circumstances in which it can be used to stay actions against non-debtors, see id. ("[s]ection 362 is rarely, however, a valid basis on which to stay actions against non-debtors") (quoting Arnold v. Garlock, Inc., 278 F.3d 426, 436 (5th Cir. 2001)). The Fifth Circuit has identified only one such circumstance, holding that "a bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt co-defendants where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" id. (quoting A.H.

15

Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)). Significantly, however, most courts have recognized that the automatic stay provided by section 362 "does not apply automatically to stay actions against non-debtors." In re Bidermann Indus. U.S.A., Inc., 200 B.R. 779, 782 (Bkrtcy. S.D.N.Y. 1996). Instead, "[t]he debtor must obtain a stay order from the bankruptcy court, and *until it does, the action against the non-debtor may proceed*." Id. (emphasis added). Thus, in In re All Seasons Resorts, Inc., 79 B.R. 901, 903-904 (Bkrtcy. C.D. Cal. 1987), the court explained that while the bankruptcy court, acting pursuant to § 105(a), may extend the automatic stay under § 362 to stay and enjoin proceedings or acts against non-debtors where such actions would interfere with, deplete or adversely affect property of the debtor's estate, to achieve this result, a debtor must proceed through § 105(a). In other words, the extension of § 362 does not occur automatically ... but requires the filing of an appropriate adversary proceeding under § 105 and § 362 to achieve the desired result."[6] Id. See also DAB Three, LLC v. LandAmerica Financial Group, Inc., No. CV065004236S, 2009 WL 1312752, 5 (Conn. Super. Apr. 15, 2009)("[A] suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing ...").

---

[6] See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.).

16

Here, Pneumo sought an order from the Federal Mogul bankruptcy court granting it the protection of the automatic stay, but its efforts were rejected. And regardless of what Pneumo or plaintiffs may have believed regarding Pneumo's entitlement to such protection, the fact is, there was never a time when the automatic stay applied to Pneuno. As the cited cases make clear, while the automatic stay did apply automatically to the debtors immediately upon the filing of the bankruptcy petition, it did not apply "automatically" to Pneumo, and in fact, based on the bankruptcy court's ruling, it never applied to Pneumo. The bankrutpcy, then, cannot legitimately be claimed as "an intervening and disabling event" which rendered performance by plaintiffs or by Pneumo impossible for any period of time. Under the terms of the agreement, plaintiffs had until May 1, 2003 to submit their settlement documents to Pneumo, which they failed to do. Summary judgment will therefore be granted on plaintiffs' claim for breach of contract premised on Pneumo's rejection of their claims.[7]

---

[7] To the extent that plaintiffs may have claimed that Pneumo breached the settlement agreement by failing to pay into the settlement fund, the court finds merit in Pneumo's position that any claim for nonpayment of the first six installments is time-barred, see supra p. 7, and a claim that it breached its obligation to pay the "remainder" is barred, since there were no qualifying claims pending for payment as of May 1, 2003 and there was therefore no remaining sum due from Pneumo under the agreement, see supra p. 8.

17

Citing the principle that the statute of limitations is equitably tolled when one party knew or had reason to know that its conduct would induce another not to file his complaint sooner, see PMZ Oil Co. V. Lucroy, 449 So. 2d 201, 206 (Miss. 1984) (citing this principle), plaintiffs argue, alternatively, that Pneumo is equitably estopped from asserting the statute of limitations as a bar to their claims herein, reasoning that "[i]f Pneumo had actual, constructive or imputed knowledge of the Federal Mogul bankruptcy one month before its performance under the Settlement Agreement was to commence, it must be equitably estopped from asserting the statute of limitations in defense of this action." Plaintiffs' argument on this point would fail if for no other reason than plaintiffs have offered no evidence to support this claim. Moreover, plaintiffs do not explain how knowledge by Pneumo that Federal Mogul would be filing bankruptcy would bear on the statute of limitations, or more pertinently, their decision whether (or when) to file suit. Plaintiffs were themselves aware of the Federal Mogul bankruptcy within a few months of entering the settlement agreement, and were not *induced* by Pneumo's actions into postponing filing their lawsuit. They made the decision how (and when) to proceed with full knowledge of the pertinent facts, and have asserted no valid basis for relief from that decision.

For all of the foregoing reasons, plaintiffs contract-based claims will be dismissed. In addition to those claims, plaintiffs have undertaken to assert a cause of action for fraud based on their allegation that at the time they entered the settlement agreement, Pneumo knew that Federal Mogul and its affiliates were on the verge of bankruptcy, and yet it concealed this information from plaintiffs, thereby inducing plaintiffs to enter into the settlement agreement without all material information. Pneumo has moved for summary judgment on the basis that this claim is barred by the applicable three-year statute of limitations under Mississippi Code Annotated § 15-1-49, and for lack of evidence from plaintiffs to substantiate their allegations. Pneumo's motion is well taken as to these claims and will be granted.

Based on the foregoing, it is ordered that Pneumo's motion for summary judgment is granted, and plaintiffs' motion for summary judgment is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 10th day of December, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE